Phillip D. LOGAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A03–0502–CR–50.

Court of Appeals of Indiana.

Oct. 31, 2005.

Transfer Denied Jan. 4, 2006.

V. Michael Drayton, Sallwasser and McCain, LaPorte, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAILEY, Judge.

### Case Summary

Appellant–Defendant Phillip D. Logan ("Logan") appeals the trial court's order denying his motion to dismiss and motion for discharge. We affirm.[1]

### Issues

Logan raises two issues, which we restate as:

I. Whether Indiana Code Section 35–42–4–4 unconstitutionally infringes upon Logan's free speech rights provided by the federal and Indiana constitutions;

II. Whether the trial court erred in denying Logan's motion for discharge under Indiana Criminal Rule 4(C).

### Facts and Procedural History

The State charged Logan with Child Exploitation, a Class C felony,[2] and Possession of Child Pornography, a Class D felony,[3] based upon Logan's alleged viewing of child pornography on a computer at LaPorte Fire Station # 1. According to the probable cause affidavit, police were able to locate twenty-seven pictures of "naked children, under the age of 16," on the computer, including a picture "which depicts 2 small girls, under the age of 16, sitting naked on a chair, posing for a picture, with the focus on their genitala [sic] area." Appellants' App. at 3. Logan was arrested on August 4, 2003, and he requested a speedy trial. The trial court scheduled a jury trial for June 7, 2004.

On August 14, 2003, Logan filed a motion for discovery requesting production of the computer program the State used to

---

1. We hereby deny Logan's motion for oral argument.

2. Ind.Code § 35–42–4–4(b).

3. Ind.Code § 35–42–4–4(c).

discover evidence on the computer. The State failed to produce the computer program, known as ILook, even after the trial court entered an order compelling production.

On January 20, 2004, Logan moved to dismiss the charges based upon First Amendment grounds. On February 20, 2004, the State dismissed the charges and immediately refiled charges using a different forensic computer program, called Encase. On April 6, 2004, approximately sixty days prior to trial, the State provided Logan a copy of the Encase program, thereby complying with the court's discovery order. Logan moved to continue the trial date, and the trial court set the new trial date for January 10, 2005. Logan objected to the date and subsequently filed a motion for discharge, but the trial court stated that court congestion prevented an earlier date. The trial court ultimately denied Logan's motion to dismiss and motion for discharge. The trial court certified its order for interlocutory appeal, and we accepted jurisdiction on March 7, 2005.

### Discussion and Decision

#### I. Constitutionality of Indiana Code Section 35–42–4–4

##### A. Standard of Review

■ A statute is presumed constitutional until the party challenging the statute clearly overcomes this presumption by a contrary showing. *Sims v. U.S. Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind.2003) (citing *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996)). This court may nullify a statute on constitutional grounds only where such a result is clearly rational and necessary. *Id.* Whether a statute is constitutional on its face is a question of law. *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind.1997). When the issue presented on appeal is a question of law, we review the matter de novo. *Id.*

#### B. Analysis

Logan argues that Indiana Code Section 35–42–4–4 is unconstitutionally overbroad and vague, in violation of the First Amendment and Article I, Section 9 of the Indiana Constitution. We address each argument in turn.

##### 1. Child Pornography under the First Amendment

■ Freedom of speech is generally regarded as one of our most cherished rights in American society. Typically, content-based regulation of speech must overcome the high hurdle of strict scrutiny analysis. However, the Supreme Court has recognized, from the beginning of its modern jurisprudence, that:

> "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene ... It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

*New York v. Ferber*, 458 U.S. 747, 754, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)).

In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Court, in defining an obscenity standard, found that an obscenity offense "must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which taken as a whole, do not have serious literary, artis-

tic, political, or scientific value." *Id.* at 24, 93 S.Ct. 2607.

Later, in *Ferber*, the Court upheld a state statute criminalizing the dissemination of child pornography. The Court distinguished child pornography from obscenity, and noted that a "trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Ferber*, 458 U.S. at 764, 102 S.Ct. 3348. Accordingly, the Court determined that child pornography was outside the protection of the First Amendment, and conduct involving child pornography could be criminalized as long as the offense was limited to "works that *visually* depict sexual conduct by children below a specified age" and "the category of 'sexual conduct' proscribed must also be suitably limited and described." *Id.* (emphasis in original).

The Supreme Court's most recent decision concerning the constitutionality of child pornography was *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). In that case, the Supreme Court held that two portions of the Child Pornography Prevention Act of 1996 ("CPPA") were unconstitutional, finding that a CPPA provision that criminalized visual depictions of what "appears to be" minors, including comput-

er-generated images (virtual pornography) or youthful-looking adults, was substantially overbroad in violation of the First Amendment.

In the present case, Indiana Code Section 35–42–4–4, provides, in pertinent part:

(b) A person who knowingly or intentionally:

\*　　\*　　\*　　\*　　\*　　\*

(3) makes available to another person a computer, knowing that the computer's fixed drive or peripheral device contains matter [4] that depicts or describes sexual conduct [5] by a child less than eighteen (18) years of age;

commits child exploitation, a Class C felony.

(c) A person who knowingly or intentionally possesses:

(1) a picture;

(2) a drawing;

(3) a photograph;

(4) a negative image;

(5) undeveloped film;

(6) a motion picture;

(7) a videotape;

(8) a digitized image; or

(9) any pictorial representation;

that depicts or describes sexual conduct by a child who is less than sixteen (16) years of age or appears to be less than sixteen (16) years of age, and that lacks

---

4. Under Indiana Code Section 35–49–1–3, "Matter" means:

(1) any book, magazine, newspaper, or other printed or written material;

(2) any picture, drawing, photograph, motion picture, digitized image, or other pictorial representation;

(3) any statue or other figure;

(4) any recording, transcription, or mechanical, chemical, or electrical reproduction; or

(5) any other articles, equipment, machines, or materials.

5. Indiana Code 35–42–4–4(a) defines "sexual conduct" as "sexual intercourse, deviate sexual conduct, exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person, sado-masochistic abuse, sexual intercourse or deviate sexual conduct with an animal, or any fondling or touching of a child by another person or of another person by a child intended to arouse or satisfy the sexual desires of either the child or the other person."

serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.

Logan contends that as in *Free Speech Coalition*, Indiana Code Section 35–42–4–4 is overbroad and vague. Specifically, Logan argues that the statute applies to material that is neither child pornography nor obscenity, and he maintains that, to the extent some elements are defined, the average person cannot reasonably ascertain whether such material is proscribed by statute. We address each argument in turn.

### A. Overbreadth

■ The First Amendment overbreadth doctrine allows an individual to attack the constitutionality of a statute that applies to protected speech, even if the conduct by the challenging party is clearly unprotected. *Ferber*, 458 U.S. at 769, 102 S.Ct. 3348. However, because of the relative ease of imagining a situation in which the application of a statute would infringe on constitutional rights, the overbreadth in a First Amendment challenge must be "substantial." *Id.* at 769–70, 102 S.Ct. 3348 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

Here, the statute as written is overbroad, but not substantially so. On its face, Subsection 4(b) applies to not only visual child pornography, but also written descriptions of child pornography. Similarly, Subsection 4(c) applies to written descriptions of child pornography, virtual child pornography, and pornography showing youthful-looking adults.

■ Nevertheless, the mere fact that a statute exceeds the permissible bounds of what the legislature may regulate does not necessarily lead to the conclusion that the statute is constitutionally infirm. As in *Ferber*, we cannot say that "these arguably impermissible applications of the statute amounts to more than a tiny fraction of the materials within the statute's reach." *Ferber*, 458 U.S. at 773, 102 S.Ct. 3348. Moreover, the *Ferber* Court determined that "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 773–74, 102 S.Ct. 3348 (quoting *Broadrick*, 413 U.S. at 615–16, 93 S.Ct. 2908). Here, Logan does not argue that the alleged child pornography found on his work computer is outside the permissible reach of Indiana Code 35–42–4–4. We leave for another day consideration of specific abuses of the application of Indiana Code Section 35–42–4–4.[6]

### B. Vagueness

■ Logan also challenges Indiana Code Section 35–42–4–4 as unduly vague. Specifically, Logan argues that the terms "sexual conduct" and "possesses" do not adequately inform reasonable people about what conduct is prohibited, thereby providing excessive discretion to law enforcement officials.[7]

---

**6.** Further, even if we concluded that the statute was substantially overbroad, our Supreme Court has recognized that courts may judicially modify statutes so that they comply with constitutional requirements. *Brady v. State*, 575 N.E.2d 981, 984–85 (Ind.1991) ("a statute will not be declared void as unconstitutional if only part of the statute is unconstitutional and that part may be excised without altering

the meaning of the statute"). Because we conclude that the statute is not substantially overbroad, we decline to judicially excise the offending portions of the statute.

**7.** Based upon our earlier overbreadth discussion, we do not address Logan's vagueness argument with respect to the phrase, "appears to be."

■■■ Under basic principles of due process, a statute is void for vagueness if its prohibitions are not clearly defined. *Brown v. State,* 744 N.E.2d 989, 995–96 (Ind.Ct.App.2001). A statute is not unconstitutionally vague if persons of ordinary intelligence would interpret it to adequately inform them of the proscribed conduct. *Id.* at 996. No statute need avoid all vagueness, and "[b]ecause statutes are condemned to the use of words, there will always be uncertainties for we cannot expect mathematical certainty from our language." *Helton v. State,* 624 N.E.2d 499, 507 (Ind.Ct.App.1993), *trans. denied, cert. denied,* 520 U.S. 1119, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997).

Regarding "sexual conduct," Logan argues that "exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person" is vague. We note, however, that this is essentially the definition of "lewd" conduct, which the Court discussed at length in *Ferber* and found no constitutional infirmity.[8] *See Ferber,* 458 U.S. at 765, 102 S.Ct. 3348.

Logan also contends that the term "possesses" is vague as applied to the material found on his work computer. Logan contends that he could not "possess" images that were deleted and required a forensic computer program to locate on his computer. However, inasmuch as the discovery of images on a computer hard-drive is circumstantial evidence that one did "possess" the images, the term is not unduly vague. Accordingly, Indiana Code Section 35–42–4–4 does not violate the First Amendment.

### 2. Child Pornography Under Article I, Section 9

■■■ Article I, Section 9 provides as follows:

No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely on any subject whatever: but for the abuse of that right, every person shall be responsible.

In *Price v. State,* 622 N.E.2d 954 (Ind. 1993), the Indiana Supreme Court concluded that Article I, Section 9 protects expression that can be considered a "core constitutional value." *Id.* at 961. The Court determined that the defendant's conviction for disorderly conduct violated Article I, Section 9 because her verbal protests were political expression, which the Court found to be a core constitutional value. The Court found that because the defendant's protests, although disturbing neighbors from their sleep, were such a trivial infringement on their rights that the defendant had not abused her right to free expression.

In *Whittington v. State,* 669 N.E.2d 1363 (Ind.1996), the Court further refined its analysis under Article I, Section 9. In that case, the Court determined that under Section 9's responsibility clause, a defendant has the burden to show that the State's regulation of the expression is not rational. *Id.* at 1369. Accordingly, "[w]e have limited ourselves to the narrow role of determining whether challenged state action has some reasonable relation to or tendency to promote the state's legitimate interests. Thus, if a claimant demonstrates that the right to speak clause is implicated, he or she retains the burden of proving that the State could not reasonably conclude that the restricted expression was an 'abuse.'" *Id.*

Here, Logan has not demonstrated that regulation of child pornography is an

---

**8.** "Lewd" is defined as "inciting to sensual desire or imagination." WEBSTER'S THIRD NEW INT'L DICT. 1301 (2002).

abuse of his right to expression. Child pornography is not political expression, and we cannot say it is a "core" value under the Indiana Constitution. We therefore apply a rationality review in determining whether the State could reasonably conclude that, to the extent Logan's activity was expressive, it was an "abuse" of his right to expression, i.e., whether it constitutes "a threat to peace, safety, and well-being." *See id.* at 1371. The State's interest in protecting child welfare easily passes this standard. Accordingly, as limited by our prior discussion, Indiana Code Section 35–42–4–4 does not contravene the right to free expression as guaranteed by Article I, Section 9.

### II. Motion for Discharge

 The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution. *Collins v. State,* 730 N.E.2d 181, 182 (Ind.Ct.App.2000). The provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right by establishing time deadlines by which trials must be held. *Id.*

Indiana Criminal Rule 4(C) provides as follows:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of

this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

 The duty to bring the defendant to trial within one year is an affirmative one that rests with the State. *Ritchison v. State,* 708 N.E.2d 604, 606 (Ind.Ct. App.1999), *reh'g denied, trans. denied.* Criminal Rule 4 authorizes trial courts to exceed this deadline due to congestion of the court's calendar. *Collins,* 730 N.E.2d at 182–83. Upon appellate review, a trial court's finding of court congestion will be presumed to be valid and need not be contemporaneously explained or documented by the trial court. *See James v. State,* 716 N.E.2d 935, 939 (Ind.1999) (citing *Clark v. State,* 659 N.E.2d 548, 552 (Ind.1995)).

 Here, Logan moved to continue the trial date due to the State's delay in responding to Logan's discovery requests. We agree with Logan that the delay brought by filing his motion to continue is not attributable to him. *See Marshall v. State,* 759 N.E.2d 665, 670 (Ind.Ct.App. 2001) (citing *Biggs v. State,* 546 N.E.2d 1271, 1275 (Ind.Ct.App.1989), and finding State accountable for delay caused by defendant's request for continuance due to State's failure to provide discovery).

However, in continuing the trial date, the trial court made the following statement:

... I'm literally in a position where between now and the date I gave you

[January 5, 2005] is—there's [sic] other people that are set for trial—that are set for trial that probably were arrested prior to the time your client was and I'm coming up with the first day I can give you, that I can give you a good date where this thing does not get bounced around forever.

Appellant's App. at 281.

A finding of court congestion tolls the running of the time period under Rule 4(C). *See Henderson v. State*, 647 N.E.2d 7, 13 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Logan makes no argument that the trial court's finding of court congestion was incorrect. Moreover, Logan makes no argument that his trial could have been rescheduled earlier than January 5, 2005. Accordingly, the trial court's finding of congestion and rescheduling of the trial date did not constitute an abuse of discretion. Thus, the trial court properly denied Logan's motion for discharge.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.