## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 17 2018, 10:23 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria L. Bailey
Matthew D. Anglemeyer
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Paul Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 17, 2018

Court of Appeals Case No.
18A-CR-644

Appeal from the
Marion Superior Court

The Honorable
Stanley E. Kroh, Magistrate

Trial Court Cause No.
49G03-1505-F4-15776

**Kirsch, Judge.**

[1]     David Paul Jackson ("Jackson") appeals the revocation of his placement in community corrections and probation, contending that the trial court abused its

discretion when, after finding that Jackson violated the terms of community corrections and probation, it ordered him to serve the balance of his ten-year sentence in the Indiana Department of Correction ("DOC").

[2] We affirm.

## Facts and Procedural History

[3] Jackson was designated a serious violent felon in 2006, following his conviction for Class B felony burglary. On April 17, 2015, the State charged Jackson with Count I, Level 4 felony unlawful possession of a firearm by a serious violent felony; Count II, Level 5 felony criminal recklessness; and Count III, Level 5 felony attempted battery by means of a deadly weapon. On June 1, 2016, Jackson and the State entered into a plea agreement, under which Jackson would plead guilty to Count I in exchange for: (1) the dismissal of Counts II and III; and (2) a stipulation that Jackson would be sentenced to ten years, with two to six years on home detention through community corrections and the remainder of the sentence suspended, with one year on supervised probation. The trial court accepted the plea and sentenced Jackson to ten years—three years in community-corrections home detention with GPS monitoring and seven years suspended, with one year on probation.

[4] On August 4, 2016, Jackson signed a community corrections contract, and as one of the terms, Jackson gave permission for community corrections officers to enter and search his residence "based on reasonable suspicion that a violation

of any part of this contract has occurred." *State's Ex.* 1.  The contract also had the following provisions:

> You must not leave Marion County without consent from your assigned Community Supervision Manager . . . .
>
> . . . .
>
> You must not use, purchase or possess weapons, firearms, and/or ammunition.  *Any weapons, firearms, and/or ammunition found in the residence where you reside will be confiscated and will result in the immediate filing of a Notice of Violation with the Court.   There are to be no weapons in the residence regardless if any residents have a valid weapon permit*.

*Id*. (emphasis added).

[5]     An administrative hearing was held on November 10, 2016, to address a community corrections' claim that Jackson had "le[ft] his residence without permission and travel[ed] to unauthorized locations." *Appellant's App*. *Vol. II* at 60.  During that hearing, Jackson was warned that any other incidents of non-compliance with community corrections would result in a violation being filed with the trial court.  *Id*.  Between December 2016 and May 2017, community corrections and probation each filed two notices of violation, alleging in part that Jackson:  (1) failed to report for a drug screen as instructed in December 2016; and (2) provided two oral swabs that tested positive for cocaine, one on May 3, 2017 and the other on May 15, 2017.  *Id.* at 60, 64.  After admitting these violations, Jackson was placed back on supervised home detention.

[6]     In 2017, Jackson again violated the terms of community corrections when he travelled to unauthorized locations on July 25, July 26, July 29, and July 30. This behavior prompted community corrections officers, including Jill Jones ("Jones"), to visit Jackson's residence on August 2, 2017. Inside the home, the officers found Jackson, two other adults, and one child. The officers gathered the occupants into the living room while they performed a protective sweep of the one-bedroom home.

[7]     Jackson shared the bedroom with Monica Lee ("Lee"), who rented the residence.[1] As Jones entered the bedroom, another officer directed her attention to a box on the top shelf of Jackson's open closet. *Tr. Vol. 2* at 15. The box bore a label with the name and logo of the firearms manufacturer Smith & Wesson, and inside, the officers found a handgun. *Id.*; *State's Exs.* 3, 4. Further search revealed a second gun hidden underneath a nightstand. *State's Ex.* 6. In the drawer of the nightstand, officers discovered a prescription pill bottle with Jackson's name printed on the label, and on top of the nightstand, the officers found Jackson's cell phone. *Tr. Vol. 2* at 20; *State's Exs.* 5, 8. Jackson denied having knowledge that the guns were in his bedroom, and Lee said that the guns belonged to her. *Tr. Vol. 2* at 28, 33. Lee admitted that Jackson had seen the guns at least once after discovering them under a bed pillow and may have touched one of them. *Id.* at 29. Jackson was arrested and

---

[1] In the briefs, Monica Lee is referred to as the lessor. *Appellant's Br*. at 7; *Appellee's Br.* at 6. However, during trial, community corrections officer Jill Jones testified that Lee was on the lease; it was her residence. *Tr. Vol. 2* at 26. In other words, Lee was the lessee.

charged with one count of unlawful possession of a firearm by a serious violent felon. This charge was later dismissed. Even so, both community corrections and the probation department filed with the trial court notices of violation, which are the subject of the instant appeal.[2]

[8] A hearing on the notices of violation was held on March 1, 2018, at the start of which, the prosecutor clarified that Jackson "still ha[d] 167 actual days remaining on his [c]ommunity [c]orrections pending from that [earlier] case, . . . as well as seven years of suspended time on the probation case, both of which violations have been filed for." *Tr. Vol. 2* at 4. Following the hearing, the trial court found Jackson had violated the terms of his community corrections and probation, revoked his placement in those programs, and ordered him to serve the balance of his ten-year sentence in the DOC. Jackson now appeals.

## Discussion and Decision

[9] A reviewing court treats a petition to revoke placement in a community corrections program the same as a petition to revoke probation. *McCauley v. State*, 22 N.E.3d 743, 746 (Ind. Ct. App. 2014), *trans. denied*. Probation is a criminal sanction under which a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Hart v. State*, 889 N.E.2d 1266, 1271 (Ind. Ct. App. 2008). "These restrictions are designed to

---

[2] While Jackson was in jail, community corrections filed two amended notices of violation, one in August 2017 and the other in October 2017.

ensure that the probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community." *Jones v. State*, 838 N.E.2d 1146, 1148 (Ind. Ct. App. 2005).

> The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants.

*Hutchison v. State*, 82 N.E.3d 305, 310 (Ind. Ct. App. 2017) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted)). Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Id*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. On appeal, our court considers only the evidence favorable to the trial court's judgment and neither reweighs the evidence nor judges the credibility of the witnesses. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995).

[10] Probation revocation is a two-step process. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "First, the trial court must make a factual determination that a violation of a condition of probation actually occurred." *Id*. (citing *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008)). Here, Jackson does not contest that a violation occurred. "Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation." *Id*. (citing *Woods*, 892

N.E.2d at 640). Upon finding that a probationer has violated a condition of probation, a court may (1) continue the defendant on probation; (2) extend the probationary period for not more than one year beyond the original period; or (3) order all or part of a previously-suspended sentence to be executed. Ind. Code § 35-38-2-3(h).

[11] Jackson argues that the trial court abused its discretion when it revoked his placement in community corrections and probation and ordered him to serve the balance of his ten-year sentence in the DOC. He contends that he was entitled to yet more leniency from the trial court because he has family that supports him, and he needs treatment for his confessed drug abuse. We disagree.

[12] Here, community corrections' final notice of violation alleged that: (1) Jackson was arrested and charged with unlawful possession of a firearm by a serious violent felon; (2) Jackson failed to comply with community corrections' rules and regulations in 2017 when he left his residence without authorization on July 25, July 26, July 29, and July 30; and (3) two handguns were found in his residence on August 2, 2017. *Appellant's App. Vol. II* at 78. A person's probation may be revoked if "the person has violated a condition of probation during the probationary period." Ind. Code § 35-38-2-3(a)(l). Our court has held that "[a] defendant's 'probationary period' begins immediately after sentencing, even if his or her actual probation begins at a later date." *Howe v. State*, 25 N.E.3d 210, 214 (Ind. Ct. App. 2015) (citing *Kopkey v. State*, 743 N.E.2d 331, 339 (Ind. Ct. App. 2001), *trans. denied*). As such, probation can

also be revoked when a person is still in jail or on community corrections. *Id.* (citing *Johnson v. State*, 606 N.E.2d 881, 882 (Ind. Ct. App. 1993) (holding that trial court did not abuse its discretion in revoking defendant's probation before defendant completed his executed sentence)).

[13]  On appeal, Jackson claims that it was an abuse of discretion for the trial court to revoke his probation and order him to serve the balance of his sentence. Jackson first cites to family support and the fact that he was living in a "low crime area" as factors reflecting his "determination to avoid pitfalls and temptations associated with high crime neighborhoods." *Appellant's Br.* at 12-13.  We disagree.  Those factors were present when Jackson committed his first, second, and third violation of community corrections.  Jackson cites to no reason how things have changed such that family support and the location of his residence will now result in Jackson being compliant with the terms of community corrections.

[14]  Jackson also claims that his sentence should have been more lenient because he "never got the chance to receive the full benefit of [drug] assessments and treatments." *Id.* at 14.  Irrespective of whether a transitional placement like work release would allow Jackson to obtain treatment for his admitted drug abuse problems, there is nothing in the record that suggests that Jackson would be successful at achieving rehabilitation through yet another lenient sanction. In February 2013, Jackson was convicted of operating a vehicle while intoxicated ("OWI"), and as a condition of probation, Jackson was ordered to take part in substance abuse treatment.  *Appellant's Br.* at 14.  Jackson admits

that he did not complete that treatment because he was arrested during his term of probation for a second charge of OWI. Jackson was sentenced to home detention with alcohol monitoring for both his probation violation and his new operating while intoxicated case. *Id*. at 13 (citing *Tr. Vol. 2* at 90-91). Jackson contends that the alcohol monitoring did not address the root cause of his alcohol and substance abuse issues, and soon thereafter, he was convicted of prescription abuse offenses. *Id*. The sentence for that offense included "substance abuse treatment." *Id*. However, during his probation, Jackson was charged with robbery, and his probation was terminated as unsuccessful. *Id*. In 2017, after Jackson's second violation of community corrections, the trial court, again, ordered Jackson to undergo substance abuse evaluation and treatment. That treatment was interrupted, however, when Jackson, once again, was arrested for the guns found in the bedroom he shared with Lee. Jackson was given many opportunities to take part in drug assessment and treatment. It was Jackson's ongoing criminal activity that repeatedly interfered with completion of these programs.

[15] Here, Jackson violated the terms of community corrections on two prior occasions, and the trial court granted Jackson the grace of returning to community corrections' supervised home detention. However, after finding that Jackson had violated the terms of community corrections for yet a third time (by travelling to unauthorized locations on at least four separate occasions and having two firearms in his residence), the trial court revoked Jackson's community corrections and probation and ordered the execution of the balance

of his ten-year sentence. Jackson did not reform the very behaviors that caused him to be placed in community corrections in the first place. The evidence supports that he was found in possession of two guns, which he had failed to remove from his residence despite knowing that the terms of his community corrections did not allow guns to be present inside his home.[3] The trial court did not abuse its discretion by ordering Jackson to serve the balance of his ten-year suspended sentence.

Affirmed.

Vaidik, C.J., and Riley, J., concur.

---

[3] Jackson contends that, because his possession of the guns was constructive, his violation urges a modification of sentence. *Appellant's Br*. at 14. We disagree. "Possession can be either actual or constructive." *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017) (citing *Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015) ("Although arising in a different context our jurisprudence on the issue of 'possession' is rather straightforward: it can be either actual or constructive.")), *trans. denied*. Our court makes no distinction between the degree of culpability for actual possession versus constructive possession.